KEVIN A. DARBY, ESQ. (#7670)  *Electronically filed 8/20/2018*
TRICIA M. DARBY, ESQ. (#7956)
DARBY LAW PRACTICE, LTD.
4777 Caughlin Parkway
Reno, Nevada 89519
Telephone: (775) 322-1237
Facsimile: (775) 996-7290
E-mail: kad@darbylawpractice.com
      tricia@darbylawpractice.com

Attorney for Debtor

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

In re:

TRISHA ANN VISER,

                Debtor.

_____/

CASE NO.   BK-N-18-50677-BTB
Chapter 7

**MOTION FOR VIOLATION OF AUTOMATIC STAY AND MOTION FOR SANCTIONS**

Hearing Date:  TBD
Hearing Time:  TBD

      TRISHA ANN VISER ("Debtor"), by and through her counsel, DARBY LAW PRACTICE, LTD., hereby files this Motion for Violation of Automatic Stay and Motion for Sanctions against Kromer Investments Inc., a California corporation doing business in Nevada as Bristle Pointe Apartments ("Bristle Pointe") pursuant to 11 U.S.C. §362, for the reasons set forth below.  This Motion is supported by the Declaration of Debtor and the following points and authorities.

**POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

      This case presents egregious, knowing and willful violations of the automatic stay by Bristle Pointe Apartments.  Despite receiving notice of this bankruptcy case from the Bankruptcy Court and, thereafter directly from Debtor, Bristle Pointe knowingly engaged in a course of conduct that blatantly violates 11 U.S.C. §362.  As more fully detailed below, the nature and extent of Bristle Pointe knowing and willful stay violations warrants an award of actual and punitive damages as follows:

1

      a.      Actual damages of $500.00 for costs incurred for hotel rooms and food resulting from Bristle Pointe's eviction of the Debtor in violation of the stay;

      b.      Actual damages of $7,500 for the attorney's fees and costs Debtor incurred to regain possession of her apartment and bring this Motion;

      c.      Emotional distress damages of $52,500, calculated at $7,500 per person for the Debtor, her husband and Debtor's five children displaced by Bristle Pointe's violation of the stay;

      d.      Punitive damages of $17,500 calculated at $2,500 per person for the Debtor, her husband and Debtor's five children displaced by Bristle Pointe's violation of the stay; and

      e.      Such other relief this Court deems appropriate and necessary under the circumstances of this case.

## II.    STATEMENT OF FACTS

1. Debtor has five children between the ages of 19 months and 12 years old. Debtor is the only wage earner in her family at this time. Declaration of Debtor, ¶ 3.

2. Debtor filed this Chapter 7 bankruptcy case on June 25, 2018. At the time of the bankruptcy filing Debtor resided in an apartment located at 2050 Longley Lane #503, Reno, Nevada 89502 (the "Longley Property"). *Id.*, ¶ 1.

3. Debtor was current on her lease obligations to Bristle Pointe at the time she filed for bankruptcy protection. *Id.*, ¶ 2.

4. Debtor's Schedule G lists GC Bristle Pointe as Debtor's landlord via AM Rent its agent.

5. GC Bristle Pointe via AM Rent received notice of the bankruptcy filing from the Bankruptcy Court on or about June 26, 2018. Dkt. #8.

6. On July 20, 2018, Debtor received a voice mail message from Bristle Pointe that her rent needed to be paid. Debtor thought that was weird because her landlord should have received notice of her bankruptcy filing by then. Debtor had previously told her landlord that she was filing bankruptcy. *Id.*, ¶ 4.

7. On July 21, 2018, Debtor called Bristle Pointe and spoke to Karen. *Id.*, ¶ 5. Debtor asked Karen if they had received notice of her bankruptcy filing. *Id.* Karen indicated that she had

not received notice of the bankruptcy filing and that the bankruptcy did not matter because they had not received anything in the mail. *Id.* Debtor then informed Karen of her bankruptcy case number and offered to bring down documentation. *Id.* Karen said she would speak to the manager and if they needed the paper work they would call Debtor back. *Id.*

8. On July 23, 2018, Debtor answered a phone call from Jasmine at Bristol Pointe. Declaration of Debtor, ¶ 6. Jasmine told Debtor that she needed to come down with rent immediately otherwise, she was going to be evicted. *Id.* Debtor asked Jasmine if she received the message Debtor left for her on Friday, July 20, 2018. *Id.* Jasmine said she did. *Id.* Jasmine then informed Debtor that the bankruptcy does not apply to apartments. *Id.* Jasmine spoke to her supervisor, who accused Debtor of making up the bankruptcy and creating a fake notice of filing. *Id.* Debtor told Jasmine that the bankruptcy stay does apply to apartments and bankruptcy rules do not prohibit her from collecting. *Id.* Jasmine then told Debtor that she needed to pay the rent or else she would prepare the eviction notice. *Id.*

9. On July 23, 2018, Debtor called Bristle Pointe back and asked to speak with Jasmine. She was not available, so Debtor spoke with Karen. *Id.*, ¶ 7. Debtor confirmed with Karen that they had her bankruptcy case number from our previous conversation and she confirmed. *Id.* Debtor told Karen that she would bring the notice of bankruptcy to her because they could be sanctioned if they continued this harassment for payment and disregard for the bankruptcy rules. *Id.* Throughout this conversation, Karen continued to disregard Debtor and did not care. *Id.*

10. Immediately after speaking with Karen, on July 23, 2018, Debtor took the notice of bankruptcy filing to Bristle Pointe office. *Id.*, ¶ 8. Debtor gave Karen the notice of bankruptcy filing and she took a copy of the front page. *Id.* Debtor also showed Karen where Bristle Pointe was included in the bankruptcy petition. *Id.* Debtor asked her if she wanted to make a copy. *Id.* Karen said no, the front page was enough. *Id.* Karen said she would give it to her manager. *Id.*

11. On July 30, 2018, Debtor received a telephone call from Jasmine with Bristle Pointe while she was out of town for work in Las Vegas. *Id.*, ¶ 9. Jasmine left Debtor a voicemail informing her that they were going to process the eviction today if Debtor did not bring down rent in 30-45 minutes. *Id.* Debtor was worried and sick to her stomach thinking she was not going to have a

3

1 place for my children and herself to come home to. *Id.*

2     12. On the morning of August 1, 2018, a Washoe County Sheriff came to Debtor's apartment with eviction lockout orders. *Id.*, ¶ 10. Debtor was out of town at the time, but her husband and five (5) children were there. *Id.* Debtor's husband called her to inform Debtor of the eviction lockout. *Id.* Debtor told her husband to show the sheriff the notice of bankruptcy filing. *Id.* Debtor immediately started feeling anxiety and was very worried about her children and what was happening right in front of them. *Id.* The Sheriff informed Debtor over the phone that the notice of bankruptcy filing did not matter, and Debtor's family had 15 minutes to get what we needed and get out. *Id.* Debtor borrowed a vehicle and headed to the apartment. *Id.* Debtor's oldest son called her while she was on my way to the apartment. *Id.* He was crying asking the Debtor what was going on. *Id.* Debtor told him she was almost there and to stay calm that she would fix this. *Id.*

    13. Debtor arrived at the apartment to have two sheriffs watching her husband frantically getting 5 minor children ready and putting belongings in suitcases. *Id.,* ¶ 11. Debtor's husband was so worried about their family he did not even take anything for himself. *Id.* Debtor quickly threw a few suit jackets and some pants in my suitcase forgetting undergarments and essentials. *Id.*

    14. Debtor's kids were scared and took toys they do not even play with believing they would never see them again. *Id.*, ¶ 11. Debtor's son started crying about his pet lizard they were leaving. *Id.* He was so worried about how she was going to eat and who was going to switch her light. *Id.* He looked so distressed, but trusted me, and walked out in tears. *Id.*

    15. Debtor's 5-year-old son and 8-year-old daughter had their arms full of stuffed animals hugging them for comfort. *Id.* Debtor felt overwhelmed and so frustrated. *Id.* Everything happened so fast Debtor could not think of the necessities as this was happening. *Id.* Debtor was so stressed about what was happening and trying to comfort her children. *Id.*

    16. On August 1, 2018, after being locked out of their home, Debtor went down to Reno Justice Court. *Id.*, ¶ 12. The Reno Justice Court informed Debtor that the landlord was right in locking me out. I was panicked with no place for my family to go. *Id.*

    17. On August 3, 2018, Debtor filed a Motion Re: Violation of the Stay and to Set Aside Eviction Order in this Court.

18. Debtor had to find a place for her family to live. She booked 2 nights at the Grand Sierra Resort for a total of $200 and incurred the cost of feeding a family of 7 out. Declaration of Debtor, ¶ 15. Debtor also had to eat out with her family of 7 while she was locked out of her apartment. *Id.* Eating out with a family of 7 for meals is expensive. *Id.*

19. On August 3, 2018, Debtor needed to take the day off to deal with her homeless family. *Id,* ¶ 17. Debtor's kids were due to start school Monday and were calling Debtor and asking her about their stuff for school and if they would even have their special backpack and supplies, and clothes. *Id.*

20. On August 3, 2018, this Court held an emergency hearing. At the hearing Bristol Pointe was ordered to allow Debtor immediate access of the premises.

## II.  LEGAL DISCUSSION

### 1. The Automatic Stay of 11 U.S.C. §362(a) was Triggered on February 24, 2017 and Remains in Full Force and Effect.

Upon the filing of a bankruptcy case, 11 U.S.C. §362(a) imposes an automatic stay on all creditor collection activities against the debtor. Section 362(a) provides in part: "A petition filed under section 301, 302 or 303... operates as a stay, applicable to all entities, of... (3) any act to obtain possession of property of the estate or property from the estate or to exercise control over property of the estate..." The Senate Report on § 362, when it was enacted in 1978, begins:

> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove her into bankruptcy.

S. REP. No. 95-989, at 54-55 (1979) (emphasis added).

"Functionally the automatic stay is a combination of a temporary restraining order and a preliminary injunction." In re Henry, 266 B.R. 457 (Bankr.C.D.Cal. 2001). The Bankruptcy Court in In re Henry found the automatic stay differs from a temporary restraining order and a preliminary injunction in six ways:

5

> (1) it is automatic upon the filing of a bankruptcy petition and does not require a court order; (2) a debtor is not required to carry any burden of proof or provide any level of evidence to obtain it; (3) a creditor is not entitled to be heard, or even to be given notice, before it is imposed; (4) it requires no bond; (5) it is binding on all creditors, whether or not they have notice of it, and lack of notice is chiefly a defense to punitive damages.

The Ninth Circuit has addressed the impact of the automatic stay on numerous occasions. For example, it has recently stated:

> The stay is self-executing, effective upon the filing of the bankruptcy petition, and sweeps broadly, enjoining the commencement or continuation of any judicial, administrative or other proceedings against the debtor, enforcement of prior judgments, perfection of liens, and any act to collect, assess or recover a claim against the debtor that arose before the commencement of the case.

In re Henry, 266 B.R. at 469, citing, In re Pettit, 217 F.3d 1072, 1077 (9th Cir. 2000); see also In re Ramirez, 183 B.R. 583, 591 (9th Cir. BAP 1995) ("Creditors and their agents must immediately stop all collection and enforcement actions affecting the debtor or property of the estate…").

In this case, the automatic stay was triggered on June 25, 2018 when Debtor filed her Chapter 7 bankruptcy case. On that date, Debtor's interests under the lease, and in the apartment, became an asset of the bankruptcy estate. As a result, all of the Debtor's creditors, including Bristle Pointe, were barred from taking any action to obtain possession of the Debtor's apartment.

### 2. **Bristle Pointe Willfully Violated the Automatic Stay, Which Damaged Debtor and Her Family.**

"An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorney's fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. §362(k)(1). Section 362(k) mandates a two-prong inquiry: First, the Bankruptcy Court must determine that the individual seeking the award was indeed injured by the violation of the automatic stay. Second, the court must determine that the violation was willful. Proof of specific intent to violate the automatic stay is not required. See In re Dyer), 322 F.3d 1178, 1191 (9th Cir. 2003). Instead, the moving party need only demonstrate that the creditor knew of the automatic stay, and that the creditor's actions that violated the stay were intentional. See In re Pace, 67 F.3d 187, 191 (9th Cir. 1995). A party with knowledge of the bankruptcy proceeding is considered to have knowledge of the automatic stay. See In re Perl, 513 B.R. 566, 576 (B.A.P. 9th

6

Cir. 2014), rev'd on other grounds, 811 F.3d 1120 (9th Cir. 2016). Whether the party believes in good faith that it had a right to the property is not relevant to whether the act was "willful" or whether compensation must be awarded. In re Bloom, 875 F.2d 224, 227 (9th Cir. 1989).

A willful violation of the automatic stay results in a mandatory imposition of actual damages, costs and attorneys fees under §362(k)(1). In re Ramirez, 183 B.R. 583, 589 (Bankr. 9th Cir. 1995). Specifically, 11 U.S.C. §362(k)(1) provides:

> Except as provided in paragraph (2), an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

An award of attorneys' fees under Section 362(k) may include the fees incurred in seeking to enforce the automatic stay, including on appeal, and is not limited to the attorneys' fees incurred up to the time the automatic stay violation ceases. See In re Schwartz-Tallard, 803 F.3d at 1101., overruling In re Sternberg, 595 F.3d 937 (9th Cir. 2010).

In In re Snowden, 769 F.3d 651 (9th Cir. 2014), the Ninth Circuit affirmed each part of a stay violation damages award for a far less egregious violation of the automatic stay. That case involved a payday loan company cashing a $575 check after the bankruptcy case was filed. The Snowden bankruptcy court awarded a total of $27,483.55 to the debtor, which included: emotional distress damages of $12,000, the amount of the cash check $575, $370 in bank fees, $12,000 in punitive damages, and $2,538.55 in attorneys' fees. In Snowden, the Ninth Circuit found that a "reckless or callous disregard for the law," can support an award of punitive damages. Snowden, 769 F.3d at 657, quoting In re Bloom, 875 F.2d 224, 228 (9th Cir. 1989).

In this case, Bristle Pointe violated the automatic stay by evicting Debtor *after* Bristle Cone learned of the Debtor's bankruptcy filing. That stay violation and eviction were indisputably knowing and willful. The improper eviction caused substantial emotional distress to the Debtor, her husband and her five kids ranging from 19 months and 12 years old. Such emotional distress should be apparent to anyone from the facts of this case. The Debtor also suffered actual damages in the form of attorney's fees, costs and the expenses associated with having to stay in a hotel room.

For all of the reasons detailed above, the nature and extent of Bristle Pointe's knowing and willful stay violations, warrants an award of actual and punitive damages in favor of the Debtor as follows:

    a.    Actual damages of $500.00 for costs incurred for hotel rooms and food resulting from Bristle Pointe's eviction of the Debtor in violation of the stay;

    b.    Actual damages of $7,500 for the attorney's fees and costs Debtor incurred to regain possession of her apartment and bring this Motion;

    c.    Emotional distress damages of $52,500, calculated at $7,500 per person for the Debtor, her husband and Debtor's five children displaced by Bristle Pointe's violation of the stay;

    d.    Punitive damages of $17,500 calculated at $2,500 per person for the Debtor, her husband and Debtor's five children displaced by Bristle Pointe's violation of the stay; and

    e.    Such other relief this Court deems appropriate and necessary under the circumstances of this case.

DATED this 20th day of August 2018.

                          DARBY LAW PRACTICE, LTD.

                          */s/ Tricia M. Darby*
By:_____
   TRICIA M. DARBY, ESQ.
   4777 Caughlin Parkway
   Reno, NV 89519
   Attorney for Debtor